UNITED STATES of America, Plaintiff,

v.

PANHANDLE EASTERN CORP., Panhandle Eastern Pipe Line Co., Trunkline Gas Co., Trunkline LNG Co., General Dynamics Corp., Moore McCormack Resources, Inc., Moore McCormack LNG Transport, Inc., Morgas, Inc., Pantheon, Inc., Pelmar Co., and Lachmar, a Delaware General Partnership, Defendants.

Civ. A. No. 87–190–JLL.

United States District Court,
D. Delaware.

Jan. 7, 1988.

Sue L. Robinson, Asst. U.S. Atty., Wilmington, Del., Robert M. Hollis and Gregory A. Harrison, Civ. Div., Dept. of Justice, Washington, D.C., and Robert J. Patton, Jr., Maritime Admin., Washington, D.C., of counsel, for plaintiff.

Lawrence A. Hamermesh and Vicki Hagel, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., and Michael Joseph, Thomas M. Dyer, E. Alex Blanton, Marie Louise Hagen, and Brett M. Esber, of Dyer, Ellis, Joseph & Mills, Washington, D.C., of counsel, for defendants Panhandle Eastern Corp., Panhandle Eastern Pipe Line Co., Trunkline Gas Co., Trunkline LNG Co., Morgas, Inc., Pantheon, Inc., Pelmar Co., and Lachmar.

Richard A. Levine, of Young, Conaway, Stargatt & Taylor, Wilmington, Del., and Richard T. Franch, Robert T. Markowski, and Robert R. Stauffer, of Jenner & Block, Chicago, Ill., of counsel, for defendant Gen. Dynamics Corp.

Thomas Herlihy III, of Herlihy & Wier, Wilmington, Del., and Ralph J. Savarese, Michael J. Hurley, and Thomas Horton, of Howrey & Simon, Washington, D.C., of counsel, for defendants Moore McCormack Resources, Inc., and Moore McCormack LNG Transport, Inc.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

## I. INTRODUCTION

The present matter arises out of a civil action brought by the United States of America, on behalf of the Maritime Administration, demanding monetary, equitable and declaratory relief from Panhandle Eastern Corporation ("PEC") and its affiliates,[1] General Dynamics Corporation, Moore McCormack Resources, Inc., and Moore McCormack LNG Transport, Inc. The United States has brought this action to protect its security interest as guarantor of ship financing bonds issued pursuant to Subchapter XI of the Merchant Marine Act of 1936, 46 U.S.C. §§ 1271–1279c (1982). The case is currently in the discovery stage. Presently before the Court is the Motion of Defendant Panhandle Eastern Pipe Line Co. ("PEPL") for Protective Order (Docket Item ["D.I."] 75), pursuant to Rule 26(c) of the Federal Rules of Civil Procedure. By its motion, PEPL attempts to prevent the disclosure of documents relating to arbitration proceedings which were held in Geneva, Switzerland between PEPL and Sonatrach, the Algerian National Oil and Gas Company ("Sonatrach Arbitration"). In support of its motion, PEPL essentially argues that disclosure to third parties of documents related to the Sonatrach Arbitration would severely prejudice defendants' ongoing business relationship with both Sonatrach and the Algerian Government. Nevertheless, because the Court finds that PEPL has failed to satisfy the "good cause" requirement of Rule 26(c) of the Federal Rules of Civil Procedure, and because its filing is untimely, its motion will be denied.

## II. FACTS PERTAINING TO THIS MOTION

The facts needed to be reviewed for an accurate assessment of the present motion are traceable back to May 8, 1987. On that date plaintiff, United States, served PEC with Plaintiff's First Request for Produc-

---

**1.** Unless otherwise indicated, reference to PEC includes all of its subsidiaries: Panhandle Eastern Pipe Line Co., Trunkline Gas Co., Trunkline LNG Co., Morgas, Inc., Pantheon, Inc., Pelmar Co., and Lachmar.

tion of Documents ("Request for Production") (D.I. 9). Included within plaintiff's Request for Production were:

All documents relating to the Sonatrach Arbitration ("Sonatrach Arbitration documents"), including, but not limited to: briefs, correspondence and other papers filed with or submitted to the arbitrators, or their delegates; communications between any and all of the defendants; depositions or other witness statements; transcripts of all hearings before the arbitrators, or their delegates; proposals to settle the arbitration; and, inter- or intracompany documents.

(*Id.*, Request for Production No. 6, at 10.) In its June 15, 1987 Response of Defendants Panhandle Eastern Corporation Et Al. To Plaintiff's First Request For Production of Documents (D.I. 23), PEC informed plaintiff that "[d]ocuments withheld pursuant to claim of attorney-client, work-product or other privilege will be identified upon completion of document production." (*Id.* at 1.) With respect to the Sonatrach Arbitration documents in particular, PEC objected to their production because the issues to which they related were allegedly resolveable only through arbitration proceedings. (*See id.*, Objection No. 4, at 3; Objection No. 6, at 4.) Plaintiff reviewed PEC documents during the week of June 29, 1987. During this time, however, PEC produced no documents relating to the Sonatrach Arbitration.

On October 9, 1987, plaintiff filed its Motion to Compel Production of Documents and Answers to Interrogatories ("Motion to Compel") (D.I. 57), in which it sought, among other things, to compel PEC to produce the Sonatrach Arbitration documents. This Court effectively removed the foundation for PEC's objection to production of the Sonatrach Arbitration documents when it orally denied PEC's Motion For Stay of Judicial Proceedings Pending Arbitration ("Motion to Stay") (D.I. 31, as amended by D.I. 46 at 1–2) at a hearing held on October 16, 1987.

Following that hearing, on October 19, 1987, this Court issued a Rule 16 Scheduling Order ("Scheduling Order") (D.I. 65) which noted that counsel for PEC had represented to the Court that PEC would withdraw its objections to plaintiff's document requests in light of the denial of the Motion to Stay. (*Id.*, ¶ 8, at 2.) The Scheduling Order also recognized, however, that counsel for PEC had "requested a short additional time to determine whether PEC had other grounds for objections to [the] discovery...." (*Id.*) The Court therefore ordered that counsel for PEC had to file any such objections on or before October 23, 1987. (*Id.* at 2–3.)

By letter dated October 22, 1987, counsel for PEC responded and stated its position to the Court:

We have confirmed that the sole basis for objection to the discovery requests covered by plaintiff's pending motion to compel is that the material sought is relevant only to the claims we believe must be resolved by arbitration. Accordingly, and in light of the Court's order of October 19 denying the motion for a stay of judicial proceedings, we will not file a brief in opposition to the motion to compel even though we oppose the motion. While we continue to believe that the basis for our objection is valid, we trust that the Court will grant plaintiff's motion to compel for the same reason it has denied defendants' motion for a stay.

(*See* D.I. 68, attached Exhibit.) In view of this response, this Court the following day ordered PEC to produce the requested documents by November 12, 1987, unless the parties mutually agreed to a different time, date or place of production. (Order Compelling Discovery, D.I. 68, ¶ 1, at 2.) After the issuance of that order, PEC unsuccessfully sought plaintiff's agreement to a protective order to preserve the "confidentiality" of the Sonatrach Arbitration documents. On November 17, 1987, PEC made available to plaintiff all the documents enumerated in the October 23 order (*see* D.I. 68, ¶ 1, at 2), except for the Sonatrach Arbitration documents. PEC had offered to make the Sonatrach Arbitration documents available as well, so long as plaintiff would refrain from copying them or taking notes. (*See* Brief in Support of Motion of Defendant Panhandle Eastern

Pipe Line Co. For Protective Order, D.I. 77, at 2–3; United States' Brief in Opposition to Motion of Defendant Panhandle Eastern Pipe Line Co. for Protective Order, D.I. 79, at 5 n. 3.) Plaintiff declined to accept this offer, no doubt because this Court's October 23 Order Compelling Discovery imposed no such limitations. (*See* D.I. 68, ¶ 1, at 2.) Finally, on December 4, 1987, defendant PEPL filed its motion for a protective order to preserve the alleged "confidentiality of documents" submitted in the Sonatrach Arbitration.

## III. ANALYSIS

■ The standard for issuing a protective order has been clearly articulated by the Third Circuit Court of Appeals in *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108 (3d Cir.) ("*Cipollone I*"), on remand, 113 F.R.D. 86 (D.N.J.1986), aff'd, 822 F.2d 335 (3d Cir.1987). In *Cipollone I* the court of appeals stated that Rule 26(c) of the Federal Rules of Civil Procedure[2] places the burden of persuasion on the party seeking the protective order. 785 F.2d at 1121. The rule mandates that to successfully carry this burden "the party seeking the protective order must show good cause by demonstrating a particular need for protection." *Id.* See also *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F.Supp. 866, 891 (E.D.Pa.1981) (showing that disclosure will work a clearly defined and serious injury is necessary to establish "good cause"). In order to substantiate the claim, the movant must provide specific examples of the harm that will be suffered because of the disclosure of information; broad-sweeping allegations are insufficient under Rule 26(c). 785 F.2d at 1121 (citing *United States v. Garrett*, 571 F.2d 1323,

1326 n. 3 (5th Cir.1978); *General Dynamics Corp. v. Selb Mfg. Corp.*, 481 F.2d 1204, 1212 (8th Cir.1973), cert. denied, 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974); 8 C. Wright & A. Miller, Federal Practice and Procedure § 2035 (1970 & Supp.1987)). Furthermore, the harm thereby demonstrated "must be significant, not a mere trifle." 785 F.2d at 1121 (citing *Joy v. North*, 692 F.2d 880, 894 (2d Cir.1982), cert. denied sub nom. *Citytrust v. Joy*, 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983)).

In light of the foregoing requirements, it is clear that PEPL has failed to carry its burden of showing good cause. The only foundation that PEPL has provided in support of its motion is the affidavit of Louis Begley ("affidavit") (D.I. 76), who served as lead counsel for PEPL and Trunkline LNG Co. ("TLC") in the Sonatrach Arbitration. The affidavit first presents the argument that the applicable Rules of the Court of Arbitration of the International Chamber of Commerce ("ICC Rules") require the Sonatrach Arbitration documents to be kept confidential. (*Id.* ¶¶ 5–9, at 2–5.) In support of this argument Begley cites to various rules, including one which states that "[t]he work of the Court of Arbitration is of a confidential character which must be respected by everyone who participates in that work in whatever capacity." (*Id.* ¶ 7, at 3.) However, this rule, as well as another which the affidavit quotes for support, have been culled from Appendix II of the Rules, which is entitled: "Internal Rules of the Court of Arbitration." (*See* Appendix to United States' Brief, D.I. 79A, A16.) These rules are therefore meant to be applied internally, governing the members of the Court of Arbitration. They do not apply to the parties to arbitration proceedings

---

**2.** Rule 26(c) of the Federal Rules of Civil Procedure reads in pertinent part:

Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place; (3)

that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by the court; (6) that a deposition after being sealed be opened only by order of the court; (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way ....

Fed.R.Civ.P. 26(c).

or to the independent arbitration tribunal which conducts those proceedings. Furthermore, even if the internal rules somehow applied to the parties, they would govern only those proceedings which take place within the Court of Arbitration, as opposed to those proceedings conducted by arbitrators who were appointed by the Court of Arbitration. As the ICC Rules themselves state: "The Court of Arbitration does not itself settle disputes. Insofar as the parties shall not have provided otherwise, it appoints, or confirms the appointment of, arbitrators in accordance with the provisions of this Article." (*Id.* at A6.) Therefore, the rules governing the internal functioning of the Court of Arbitration are not applicable here, and provide no support for PEPL's motion.

As support for the other claim, that disclosure will cause PEPL to suffer economic injury, Begley makes the same type of conclusory allegations which the Third Circuit has held to be insufficient to meet the stringent requirements of Rule 26(c). *See Cipollone I,* 785 F.2d at 1121. For example, the affidavit states that at the outset of the Sonatrach Arbitration "a general understanding was reached by counsel ... that the pleadings and related documents in the [a]rbitration would be kept confidential." (D.I. 76 ¶ 10, at 5.) However, this assertion is of questionable significance. First, Begley fails to point to any actual agreement of confidentiality, documented or otherwise. Instead, he merely gives his opinion that a "general understanding" existed. Secondly, the affidavit conveniently fails to indicate whether the understanding, if in fact it existed, was reached at Sonatrach's or PEPL's request. This distinction is significant, because elsewhere in the affidavit Begley asserts that he "became aware that Sonatrach is extremely sensitive to revelations of information it considers private." (*Id.* ¶ 11, at 5.) Based on his experience with Sonatrach, Begley "formed the opinion" that privacy and confidentiality were essential to successful business dealings with Sonatrach. (*Id.*) Despite Begley's opinion to this effect, however, he never affirmatively asserts that Sonatrach

actually sought an understanding as to confidentiality.

Even assuming that an understanding existed, the affidavit fails to provide specific examples of the harm that will befall PEPL upon disclosure. For instance, Begley suggests that by disclosing to third parties certain derogatory statements which defendants may have made about Sonatrach in the arbitration proceedings, defendants would have run the risk of "offending the sensitivities" of Sonatrach and the Algerian Government. (*Id.* ¶ 12, at 6.) Begley concludes that, in his opinion, such disclosures would have been prejudicial to any prospects for a possible settlement to the Sonatrach Arbitration. (*Id.*) However, since the settlement has already taken place and been implemented, it is impossible to imagine how present disclosure would harm PEPL in this respect. In any event, if any such potential harm exists, Begley has failed to point it out.

Additionally, Begley asserts that the disclosures would severely prejudice future business negotiations "as to price, quantities and term of deliveries" under a new contract between PEC affiliates and a Sonatrach subsidiary. (*Id.* ¶ 13, at 6.) However, such broad allegations of economic injury, without more, are insufficient to show good cause. *See Cipollone I, supra* at 1121. Rather, good cause requires a showing that the "disclosures will work a clearly defined and serious injury." *Zenith, supra* at 891. Begley's affidavit simply fails to provide such a showing.

■ Finally, even if PEPL had made a showing of good cause, its motion would have to be denied for being untimely. "Ordinarily [a protective] order must be obtained before the date set for the discovery, and failure to move at that time will be held to preclude objection later...." 8 C. Wright & A. Miller, Federal Practice and Procedure § 2035, at 262–63. On October 23, 1987, this Court issued an order setting November 12, 1987 as the date by which PEC was required to produce the requested documents. (*See* Order Compelling Discovery, D.I. 68, ¶ 1, at 2.) Nevertheless, defendants waited until December

4, 1987 to file their motion, and therefore failed to file in timely fashion. This rule for timely filing may be ignored only when there is no opportunity to move for a protective order. *See* Wright & Miller, *supra* at 263. This is certainly not the case here. To the contrary, defendants had ample opportunity to make a timely filing. In fact, in the Scheduling Order of October 19, 1987, the Court expressly granted defendants additional time to determine any possible grounds for objection to the discovery. (D.I. 65, ¶ 8, at 2.) Despite this extension, counsel for PEC responded in its October 22, 1987 letter to this Court that its "sole basis for objection" to the discovery requests was that the material sought was relevant only to claims which PEC believed must be resolved by arbitration. (D.I. 68, attached Exhibit.) It was not until six weeks later, and three weeks after the date set for discovery, that PEPL filed this motion claiming confidentiality as the basis for its objection to production. The earlier failures to move, despite ample opportunity, preclude any objection now.

## IV. CONCLUSION

The Motion of Defendant Panhandle Eastern Pipe Line Co. for Protective Order (D.I. 75) is predicated upon Rule 26(c) of the Federal Rules of Civil Procedure. The Third Circuit clearly holds that under Rule 26(c) the burden of persuasion falls on the party seeking the protective order. *Cipollone I, supra* at 1121. To successfully carry that burden, the movant must show good cause by demonstrating a particular need for protection, substantiated by specific examples of the harm to be suffered upon the disclosure of information. *Id.* The affidavit which PEPL offers as the sole support for its motion fails to satisfy the good cause requirement of Rule 26(c). Consequently, PEPL has failed to carry its burden of persuasion. In addition, PEPL has in any event failed to file its motion in timely fashion. In view of all these factors, PEPL's motion will be denied.

An order will be entered in accordance with this Memorandum Opinion.